UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


DAVID NELSON,

        Plaintiff,

v.                                Case No. 2:09-cv-01108

JUDGE MICHAEL THORNSBURY,
Circuit Court for Mingo County,
C. MICHAEL SPARKS,
Prosecutor for Mingo County,
JIM GILLMAN, Investigator,
MARK HOBBS, Attorney at law,
JOHN W. MILAM, Chief Investigator,
West Virginia State Police,
ALFRED DINGESS, JR.,
ZANDEL BRYANT,
LANETTA BAISDEN,
also known as Lanetta Nelson,
JANE DOE, Child Protective Services
Worker, DHHS, for Mingo County,
JOHN MARK HUBBARD, President
Mingo County Commission,
DAVID BAISDEN, Mingo County Commission, and
GREG SMITH, Mingo County Commission,

        Defendants.


SECOND PROPOSED FINDINGS AND RECOMMENDATION

      This Second Proposed Findings and Recommendation is filed in place of the Proposed Findings and Recommendations filed on November 17, 2009, to which Plaintiff objected, and which the undersigned withdrew by Order entered January 8, 2010.

      This is a civil rights action in which Plaintiff, an inmate at Huttonsville Correctional Center, seeks damages based on his

allegations that Defendants took various actions which violated his constitutional rights with respect to his prosecution in 2005. This case is somewhat unusual in that Plaintiff was convicted by a jury and sentenced, but his convictions were overturned on direct appeal.  He subsequently pled guilty, but he is not challenging his later conviction.

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Id. at 555.

The Supreme Court elaborated on its holding in Twombly in

2

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), a civil rights case.
The Court wrote:

> Two working principles underlie our decision in
> *Twombley*.  First, the tenet that a court must accept as
> true all of the allegations contained in a complaint is
> inapplicable to legal conclusions.  Threadbare recitals
> of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice. [*Twombley*, 550
> U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes
> of a motion to dismiss we must take all of the factual
> allegations in the complaint as true, we "are not bound
> to accept as true a legal conclusion couched as a factual
> allegation" (internal quotation marks omitted).  Rule 8
> . . . does not unlock the doors of discovery for a
> plaintiff armed with nothing more than conclusions.
> Second, only a complaint that states a plausible claim
> for relief survives a motion to dismiss.  *Id.*, at 556. *
> * *

> In keeping with these principles a court considering
> a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether
> they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.[1]

The factual background of Plaintiff's first prosecution is set

forth in detail in <u>State v. Nelson</u>, 655 S.E.2d 73 (W. Va. 2007).

Shortly after the horrific rape and murder of Wanda Lesher during

the night of August 30-31, 2002, Alfred Dingess, Jr. gave police a

---

[1]  A motion to dismiss has not been filed in this case yet.
Such a motion, filed pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*,
asserts that the complaint fails "to state a claim upon which
relief can be granted," which is the same standard set forth in
28 U.S.C. § 1915A.

statement implicating himself and Aaron Nelson (Plaintiff's brother). 655 S.E.2d at 76. Fourteen months later, Zandell Bryant gave police a statement implicating himself, Clinty Nelson (another brother of Plaintiff) and Plaintiff. Id. Alfred Dingess then gave police another statement and included Plaintiff as one of the perpetrators. Id. Aaron Nelson and Clinty Nelson are serving sentences of life imprisonment without the possibility of parole. Id. Alfred Dingess and Zandell Bryant are serving sentences with eligibility for parole. Plaintiff told police he was at work; at trial he, his wife and his daughter testified that he was at home on the night in question. Id. at 76-77.

The Supreme Court of Appeals of West Virginia ("SCAWV") reversed Plaintiff's convictions for first degree murder, kidnapping, sexual assault in the first degree and three counts of conspiracy relating to those offenses and remanded for a new trial. The SCAWV concluded that Plaintiff was denied a fair trial when the prosecution introduced hearsay evidence that Plaintiff sexually assaulted his younger sister in 1983 or 1984.[2] Id. at 80-81. Plaintiff alleges that after the reversal, he pled guilty to conspiracy to commit first degree murder and to second degree murder only because the prosecuting attorney conspired with Plaintiff's wife to eliminate his alibi defense and threatened to

---

[2] There was no prosecution or other proceedings against Plaintiff in connection with this alleged sexual assault.

arrest Plaintiff's father, brother and nephew if Plaintiff did not accept the plea agreement.  (Compl., # 2, at 12.)  He specifically denies that he is attacking his guilty pleas in this action; he seeks damages from each defendant for the reversed 2005 convictions.  Id. at 13.

Plaintiff's complaint alleges that the various defendants committed the following acts:

Judge Michael Thornsbury: went to the crime scene days after the murder; discovered evidence with the police; aided and abetted the police in their investigation; withheld and suppressed DNA evidence and exculpatory evidence; had Plaintiff's attorney Hobbs remove documents from "the files" which would prove that Thornsbury was at the crime scene.

Prosecuting Attorney C. Michael Sparks: charged Plaintiff based on the false, perjured and uncorroborated statements of Alfred Dingess and Zandel Bryant and disregarded the truth; encouraged Dingess and Bryant to perjure themselves against Plaintiff; went to the crime scene; withheld DNA evidence which would prove Plaintiff's innocence and suppressed exculpatory evidence as to Plaintiff's role; made false statements to the press concerning Plaintiff's role in the crimes against Wanda Lesher; offered the evidence of Plaintiff's alleged sexual assault of his sister; conspired with Plaintiff's wife (Lanetta Baisden) and agreed not to prosecute her friend if she did not testify in support of Plaintiff's alibi defense; threatened to arrest Plaintiff's father, brother and nephew if Plaintiff did not accept the plea agreement.

Investigator Jim Gillman: participated in the decision to charge Plaintiff based on the false, perjured and uncorroborated statements of Alfred Dingess and Zandell Bryant and disregarded the truth; encouraged Dingess and Bryant to perjure themselves against Plaintiff; went to the crime scene; withheld DNA evidence which would prove Plaintiff's innocence and suppressed exculpatory evidence as to Plaintiff's role.

Attorney Mark Hobbs: withheld DNA evidence which would prove Plaintiff's innocence and suppressed exculpatory evidence as to Plaintiff's role; communicated to Plaintiff the prosecuting attorney's threat to arrest Plaintiff's father, brother and nephew if Plaintiff did not accept the plea agreement; at the instruction

of Judge Thornsbury, removed from files certain documents which
would prove that Thornsbury went to the crime scene.

<u>Chief Investigator John W. Milam</u>: participated in the decision to
charge Plaintiff based on the false, perjured and uncorroborated
statements of Alfred Dingess and Zandell Bryant and disregarded the
truth; encouraged Dingess and Bryant to perjure themselves against
Plaintiff; went to the crime scene; withheld DNA evidence which
would prove Plaintiff's innocence and suppressed exculpatory
evidence as to Plaintiff's role; made false statements to the press
concerning Plaintiff's role in the crimes against Wanda Lesher.

<u>Alfred Dingess, Jr.</u>: gave a statement to police in September, 2002
implicating himself, Aaron Nelson [Plaintiff's brother] and Zandell
Bryant in the crimes against Wanda Lesher; fourteen months later,
changed his statement and implicated Clinty Nelson [another brother
of Plaintiff]; gave a false statement implicating Plaintiff.

<u>Zandel Bryant</u>: gave a statement to police implicating himself,
Aaron Nelson [Plaintiff's brother] and Zandel Bryant in the crimes
against Wanda Lesher; fourteen months later, changed his statement
and implicated Clinty Nelson [another brother of Plaintiff]; gave
a false statement implicating Plaintiff.

<u>Lanetta Baisden</u>: conspired with Prosecuting Attorney Sparks and
agreed not to testify to Plaintiff's alibi at the retrial in return
for Sparks's agreement not to prosecute her friend.

<u>Child Protective Services Worker Jane Doe</u>: assisted and encouraged
Prosecuting Attorney Sparks to convict Plaintiff by using a 1987
report of alleged sexual misconduct of Plaintiff and his brother
against their sister, in violation of State law and privacy
regulations.

<u>John Mark Hubbard, David Baisden and Greg Smith</u>: were aware of and
had knowledge that Prosecuting Attorney Sparks used false and
perjured information to charge Mingo County residents with crimes,
and did nothing about it, thus adopting the custom, practice and
policy.

(Compl., # 2, at 7-13.)  He asserts the following causes of action,

without specifying which cause of action is filed against which

defendant: violations of the 4th, 5th, 6th, 8th and 14th Amendments

to the Constitution of the United States; malicious prosecution;

6

slander; libel; false arrest; false imprisonment; loss of consortium; privacy rights; malpractice; fraud; abuse of process; misrepresentation; abuse of power and authority; intentional infliction of emotion and mental distress by extreme and outrageous conduct; conspiracy to violate Plaintiff's civil rights. Id. at 14.

Plaintiff's request for relief includes compensatory and punitive damages from each defendant, and injunctions "against Dingess and Bryant to give a true account," "against Prosecutor C. Michael Sparks to reveal DNA evidence that establishes Plaintiff's innocence" and "to disclose all exculpatory evidence that the plaintiff will direct him to." Id. at 15.

In Heck v. Humphrey, 512 U.S. 477, 786-87 (1994), the Supreme Court held

> that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the

> invalidity of any outstanding criminal judgment against
> the plaintiff, the action should be allowed to proceed,
> in the absence of some other bar to the suit.

There is an outstanding criminal judgment against Plaintiff based on his guilty pleas to second degree murder and conspiracy to commit first degree murder.  Thus the Court must determine whether Plaintiff's action, if successful, will demonstrate the invalidity of that outstanding criminal judgment.  Plaintiff's Complaint states that he "does not attack his guilty pleas in this [§] 1983 lawsuit."  (Compl., # 2, at 13.)

The gravamen of Plaintiff's causes of action is that "there was no justification for charging the plaintiff based upon the false and perjured statements of Dingess and Bryant."  Id. at 13. The SCAWV wrote that Dingess and Bryant testified that Plaintiff sexually assaulted Wanda Lesher and participated in killing her, and that her body was placed in the pick-up truck which Plaintiff had driven to the scene.  655 S.E.2d at 76.  The SCAWV noted that "[n]o physical evidence, however, directly connected the appellant [Plaintiff] with those terrible crimes, and, thus, the verdict of the jury rested largely upon the credibility of the witnesses, primarily Alfred Dingess, Jr., and Zandell Bryant."  Id. at 80.  If Dingess and Bryant did commit perjury in implicating Plaintiff in raping Ms. Lesher, it does not inevitably follow that Plaintiff's guilty plea is invalidated.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Heck v. Humphrey does

8

not prohibit this civil action from going forward.  The undersigned will address each defendant in turn.

Judge Thornsbury

The first matter to be considered with respect to Judge Thornsbury is whether he is immune from liability.  The Supreme Court has held that judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983, under certain conditions.  Pierson v. Ray, 386 U.S. 547 (1967).

> The first condition is that the judge's action cannot have been undertaken in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 , 98 S. Ct. 1099, 1105, 55 L. Ed.2d 331 (1978) (quoting *Bradley [v. Fisher*, 80 U.S. 335], 13 Wall. at 351-52 [(1872)]. * * * The question, then, is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him," and, in answering that question, "the scope of the judge's jurisdiction must be construed broadly . . .." *[Stump v. Sparkman,]* 435 U.S. [349], at 356 [(1978)]. *Id.*, 435 U.S. at 356, 98 S. Ct. at 1104-05.  The second condition is that the act must be a "judicial act." *Id.* at 360-62, 98 S. Ct. at 1108.

King v. Myers, 973 F.2d 354, 356-57 (4th Cir. 1992).

In Stump v. Sparkman, 435 U.S. 349, 362 (1978), the Supreme Court explained that the determination of whether an act by a judge is a "judicial act" relates "to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity."

The challenged actions attributed to Judge Thornsbury are his alleged presence at the investigation of the crime scene,

9

involvement with evidence ("withheld and suppressed DNA evidence and exculpatory evidence") and direction to attorney Mark Hobbs to remove from "the files" those documents which showed Judge Thornsbury's presence at the crime scene investigation. (Complaint, # 2, ¶¶ 15-17, 35, at 9, 13.)

The first Proposed Findings and Recommendation concluded that the Complaint failed to state a claim against Judge Thornsbury upon which relief can be granted based on absolute immunity.  In his objections, Plaintiff states the following:

> First, Judge Thornsbury agreed to work with and assist the police and the prosecutor in the investigation of the crimes committed against Wanda Lesher.  Judge Thornsbury accompanied the police to the crime scene and assisted with the gathering of evidence, withholding of evidence, giving advi[c]e and instructions to the police, and helping to solve the crimes committed against Wanda Lesher.  He was not acting in his judicial capacity.  As a result, he is not entitled to absolute immunity.

> Second, the magistrate judge's conclusion on page 9 [of the first Proposed Findings and Recommendation] that the complaint makes no link between Judge Thornsbury's being at the crime scene and the alleged perjury of Dingess and Bryant (resulting [in] the Plaintiff's conviction) is erroneous.  The Plaintiff's complaint alleges that Judge Thornsbury assisted and worked with the police in their investigation and withheld DNA evidence and other exculpatory evidence.  By Judge Thornsbury assisting the police and the prosecutor in their investigation and giving advi[c]e and instructions on what to do, he is also liable along with the prosecutor and the police for encouraging Alfred Dingess and Zandell Bryant to commit perjury.

> Under no circumstances was Judge Thornsbury performing his judicial function when he assisted and worked with the police and the prosecutor in preparing the case against the Plaintiff.  For the above reasons, Judge Thornsbury is not entitled to absolute immunity.

See <u>Forrester v. White</u>, 484 U.S. 219, 227 (1998) [sic; 1988].

(Objections, # 9, at 1.)

In <u>Forrester</u>, the Supreme Court held that a state court judge did not have absolute immunity from a damages suit under 42 U.S.C. § 1983 for his decision to demote and dismiss a probation officer. 484 U.S. at 229.  The Court used the familiar functional analysis, considering "the nature of the function performed, not the identity of the actor who performed it."  <u>Id.</u>

Judges are neither investigators nor law enforcement officers. They do not gather evidence; they rule on the admissibility of evidence in court proceedings.  Thus, assuming the factual allegations of the Complaint to be true, Judge Thornsbury was not committing a "judicial act" when he went to the crime scene. Rather, he was placing himself in the position of being a witness to the gathering of evidence.

It appears, based on Plaintiff's objections, that Plaintiff's allegations that Judge Thornsbury "withheld and suppressed . . . evidence" with the prosecutor and the police officers do not concern rulings in court or some other judicial action.  These allegations imply that Judge Thornsbury participated in decisions concerning the handling of evidence gathered at the crime scene. Such conduct is not a "judicial act."

Plaintiff's allegation that Judge Thornsbury instructed Mr. Hobbs to remove documents from "the files" which would show that

11

Judge Thornsbury was at the crime scene is also not a "judicial act."

Based on the additional detail contained in Plaintiff's objections, the undersigned proposes that the presiding District Judge **FIND** that Judge Thornsbury is not entitled to absolute judicial immunity for these alleged non-judicial acts.

The second matter to be considered with respect to Judge Thornsbury is whether the complaint states a claim against him. Plaintiff has raised numerous claims, including violations of the 5th and 14th Amendments to the Constitution of the United States, thus implicating due process and the right to a fair trial, and conspiracy to violate Plaintiff's civil rights. Taking the allegations of the complaint as true, and as further detailed in Plaintiff's objections, the undersigned proposes that the presiding District Judge **FIND** that the complaint's allegations that Judge Thornsbury participated in the investigative phase of Plaintiff's criminal case, including a conspiracy to suppress exculpatory evidence, and then directed Mark Hobbs to prevent disclosure of his participation, state a claim against Judge Michael Thornsbury.

Prosecuting Attorney C. Michael Sparks

In the first Proposed Findings and Recommendation, the undersigned noted the recent argument before the Supreme Court of Pottawattamie County, Iowa v. McGhee, No. 08-1065, which presented this question:

> Whether a prosecutor may be subjected to a civil trial
> and potential damages for a wrongful conviction and
> incarceration where the prosecutor allegedly violated a
> criminal defendant's "substantive due process" rights by
> procuring false testimony during the criminal
> investigation and then introduced that same testimony
> against the defendant at trial.

Brief of Petitioners, 2009 WL 2028900. Based on the appearance that the Court's ruling in McGhee would control the disposition of Plaintiff's Complaint against defendant Sparks, the undersigned proposed that the case go forward against him. By Order entered January 4, 2010, the Supreme Court dismissed the writ of certiorari in McGhee pursuant to Supreme Court Rule 46, the parties having settled the case. 2010 WL 6917. Accordingly, the undersigned will address whether defendant Sparks is immune and if not, whether the complaint states a claim against him.

Plaintiff's complaint alleges that defendant Sparks charged Plaintiff based on the false, perjured and uncorroborated statements of Alfred Dingess and Zandel Bryant and disregarded the truth; encouraged Dingess and Bryant to perjure themselves against Plaintiff; went to the crime scene; withheld DNA evidence which would prove Plaintiff's innocence and suppressed exculpatory evidence as to Plaintiff's role; made false statements to the press concerning Plaintiff's role in the crimes against Wanda Lesher; offered the evidence of Plaintiff's alleged sexual assault of his sister; conspired with Plaintiff's wife (Lanetta Baisden) and agreed not to prosecute her friend if she did not testify in

13

support of Plaintiff's alibi defense; threatened to arrest
Plaintiff's father, brother and nephew if Plaintiff did not accept
the plea agreement.  (# 2, ¶¶ 7-14, 17-18, 22, 28, 30, 36.)

In Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976), the
Supreme Court held that prosecutors are absolutely immune from
liability under § 1983 for their conduct in "initiating a
prosecution and in presenting the State's case," insofar as that
conduct is "intimately associated with the judicial phase of the
criminal process."  The allegations against the prosecutor in
Imbler were that he knowingly used false testimony at trial and
that he deliberately suppressed exculpatory evidence.

Since Imbler, the Supreme Court has decided several cases in
which it has used a functional analysis to determine whether
absolute immunity applies to the actions of a prosecutor.  In Burns
v. Reed, 500 U.S. 478, 492 (1991), the Court held that absolute
immunity applies to a prosecutor's pretrial court appearances in
support of taking criminal action against a suspect (in Burns, the
appearance was for the purpose of applying for a search warrant).
With respect to the function of giving legal advice to the police,
the Court held that absolute immunity did not apply.  500 U.S. at
496.

In Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993), the Court
held that "[w]hen a prosecutor performs the investigative functions
normally performed by a detective or police officer, it is 'neither

14

appropriate nor justifiable that, for the same act, immunity should protect the one and not the other'" (quoting <u>Hampton v. Chicago</u>, 484 F.2d 602, 608 (7th Cir. 1973).

> A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial.  When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

509 U.S. at 276.   The Court further held that a prosecutor's statements to the media are not entitled to absolute immunity.  <u>Id.</u> at 277.   "Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor." <u>Id.</u>

In <u>Kalina v. Fletcher</u>, 522 U.S. 118 (1997), the Supreme Court held that a prosecutor was entitled to absolute immunity for the preparation and filing of an information and a motion for an arrest warrant, but not for executing an affidavit under penalty of perjury in support of the information.

Finally, in <u>Van de Kamp v. Goldstein</u>, 129 S. Ct. 855, 861-62 (2009), the Court held that "prosecutors involved in . . . supervision or training or information-system management [relating to impeachment material of witnesses] enjoy absolute immunity."

Based on these rulings, the undersigned proposes that the presiding District Judge **FIND** that defendant Sparks is absolutely

immune from liability based on Plaintiff's claims relating to charging Plaintiff based on Dingess's and Bryant's statements, presenting Dingess's and Bryant's testimony to the jury, presenting evidence concerning Plaintiff's alleges sexual assault of his sister, conspiring with Lanetta Baisden with respect to her testimony in support of Plaintiff's alibi, and negotiating Plaintiff's plea agreement. The undersigned proposes that the presiding District Judge further **FIND** that the case should go forward against defendant Sparks with respect to his visit to the crime scene and his statements to the press.

<u>Jim Gillman and John W. Milam</u>

Police officers have qualified immunity from liability for their constitutional torts against an accused. <u>Malley v. Briggs</u>, 475 U.S. 335, 342 (1986). However, it is well settled that "the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence." <u>Miller v. Pate</u>, 386 U.S. 1,7 (1967); <u>Washington v. Wilmore</u>, 407 F.3d 274, 283-84 (4th Cir. 2005) (affirming denial of qualified immunity to police officer who allegedly "fabricated evidence"). Taking the factual allegations in the Complaint as true, the action should go forward against defendants Gillman and Milam.

<u>Mark Hobbs</u>

Mr. Hobbs was Plaintiff's court-appointed defense attorney,

who successfully presented his direct appeal to the SCAWV, resulting in reversal of Plaintiff's convictions. Plaintiff alleges that Mark Hobbs withheld DNA evidence which would prove Plaintiff's innocence and suppressed exculpatory evidence as to Plaintiff's role; communicated to Plaintiff the prosecuting attorney's threat to arrest Plaintiff's father, brother and nephew if Plaintiff did not accept the plea agreement; and, at the instruction of Judge Thornsbury, removed from "the files" certain documents which would prove that Thornsbury went to the crime scene. (Complaint, # 2, ¶¶ 17-18, 31, 35.)

It is well settled that defense attorneys do not act "under color of State law" and therefore are generally not subject to suit under 42 U.S.C. § 1983. Deas v. Potts, 547 F.2d 800 (4th Cir. 1976); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980). See Polk County v. Dodson, 454 U.S. 312 (1981) (public defender does not act "under color of state law"). Plaintiff's objections assert that "Attorney Mark Hobbs conspired with Prosecutor C. Michael Sparks to withhold DNA evidence which could have proved the Plaintiff's innocence and which could have showed that Dingess and Bryant were lying when they gave statements that the Plaintiff participated in the rape and murder of Wanda Lesher." (# 9, at 1-2.) He cites Tower v. Glover, 467 U.S. 914, 919-920 (1984), in support of his cause of action.

In Tower v. Glover, a case which pre-dates Heck v. Humphrey,

17

512 U.S. 477 (1994), the Supreme Court held that "state public defenders are not immune from liability under section 1983 for intentional misconduct, "under color of" state law, by virtue of alleged conspiratorial action with state officials that deprives their clients of federal rights." 467 U.S. at 923. The Tower case has not been overruled, but its significance has been diminished by the subsequent issuance of Heck v. Humphrey, and it is rarely cited. According to Tower, an action against Mark Hobbs is limited to those intentional acts of misconduct which were committed as part of a conspiracy with defendant Sparks to violate Plaintiff's federal rights.

The court notes that Plaintiff has included a state law cause of action for malpractice, presumably against Mr. Hobbs, for which this court would have only supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

The undersigned proposes that the presiding District Judge **FIND** that pursuant to Tower v. Glover, Plaintiff's complaint states a limited cause of action against defendant Hobbs for alleged intentional acts of misconduct which were committed as part of a conspiracy with defendant Sparks to violate Plaintiff's federal rights, and a potential state law claim for malpractice.

Alfred Dingess, Jr. and Zandell Bryant

Witnesses have absolute immunity from liability for their

18

testimony at court proceedings. <u>Briscoe v. LaHue</u>, 460 U.S. 325 (1983). Perhaps to avoid the rule of absolute immunity, Plaintiff's Complaint focuses on the *statements* given by Dingess and Bryant, not on their testimony.

Plaintiff filed objections to the first Proposed Findings and Recommendation, asserting that these defendants gave false statements and that the police knew the statements were false "because the Plaintiff's DNA was no[t] found at the crime scene or on the victim." (# 9, at 2.) The court notes that this statement regarding Plaintiff's DNA is inconsistent with other statements in the complaint and the objections to the effect that DNA testing was not done "to conceal the Plaintiff's innocence." <u>Id.</u> Plaintiff also asserts various state law claims such as malicious prosecution, slander, libel, false arrest, and false representation against these defendants. All of these allegations against Dingess and Bryant fail to address the well-settled rule that witnesses are immune from liability for their testimony. Moreover, private citizen witnesses are not "state actors," an element of a cause of action under § 1983. The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against defendants Dingess and Bryant because they have absolute immunity as witnesses.

<u>Lanetta Baisden</u>

Plaintiff's Complaint against Ms. Baisden is that she declined

to testify in support of Plaintiff's alibi if a second trial occurred.  Plaintiff's objections to the first Proposed Findings and Recommendation include additional allegations against Ms. Baisden, but none of them contradicts the fact that Ms. Baisden is a private citizen who did not act "under color of State law." Plaintiff's assertion that she engaged in a conspiracy is a legal conclusion without factual basis.  The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against defendant Lanetta Baisden.

Child Protective Services Worker Jane Doe

Plaintiff's allegations against defendant Doe are that she violated State law and privacy regulations when she allegedly disclosed a report of sexual misconduct by Plaintiff, which was used by the prosecutor during Plaintiff's trial in April, 2005. Plaintiff was obviously aware of the alleged violation of his privacy when the evidence was introduced at his trial, more than four years ago.  This would suggest that the statute of limitations has expired.  Plaintiff's objections to the first Proposed Findings and Recommendation state that Plaintiff could not have sued defendant Doe until he got his conviction reversed.  (# 9, at 2.) This is not so; Plaintiff's cause of action for violation of his privacy rights was known to him when the information was disclosed at Plaintiff's first trial.

The undersigned is unable to discern any cause of action

20

against defendant Doe as to which this Court has jurisdiction. Plaintiff does not make a federal claim against defendant Doe; it appears that she and Plaintiff are both residents of West Virginia. The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against defendant Doe, and to establish a basis for jurisdiction.

<u>John Mark Hubbard, David Baisden and Greg Smith</u>

These defendants, Mingo County Commissioners, are alleged to have adopted a custom, practice and policy of doing nothing about the Prosecuting Attorney's alleged use of false and perjured evidence and testimony to charge Mingo County residents with crimes. The prosecuting attorney of each county is not a subordinate employee of the respective county commission; the prosecutor is elected by the voters of that county. While each county commission has a limited role with respect to the prosecuting attorney's office budget, the commissioners have no role in prosecutorial decisions. The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim against defendants Hubbard, Baisden and Smith.

<u>Recommendation</u>

It is respectfully **RECOMMENDED** that Plaintiff's complaint be dismissed with prejudice pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief can be granted as to defendants

21

Alfred Dingess, Zandel Bryant, Lanetta Baisden, Jane Doe, John Hubbard, David Baisden and Greg Smith.

Plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff.


___January 12, 2010___                    *Mary E. Stanley*
          Date                            Mary E. Stanley
                                          United States Magistrate Judge